**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**ROY E. CRITCHLEY, III,**

  **Plaintiff,**

v.                                          **Case No.: 5:15-cv-08288**

**CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,**

  **Defendant.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' briefs wherein they both request judgment in their favor. (ECF Nos. 10, 11).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for judgment on the pleadings be **GRANTED**, the Commissioner's decision be **AFFIRMED,** and this case be

1

**DISMISSED** and removed from the docket of the Court.

## I.  Procedural History

On June 25, 2012, Plaintiff Roy E. Critchley, III, ("Claimant") filed applications for DIB and SSI, alleging a disability onset date of September 1, 2011, (Tr. at 195, 202), due to "[b]ack problems, arthritis, morbid obesity, mental bipolar, attention deficit, [and] high blood pressure." (Tr. at 223). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 111-39). Claimant filed a request for an administrative hearing, which was held on November 22, 2013 before the Honorable Joseph T. Scruton, Administrative Law Judge ("ALJ"). (Tr. at 52-74). By written decision dated January 30, 2014, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 36-47). The ALJ's decision became the final decision of the Commissioner on April 27, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer and a Transcript of the Proceedings on September 2, 2015. (ECF Nos. 8 & 9). Thereafter, the parties filed their briefs in support of judgment on the pleadings. (ECF Nos. 10, 11). Consequently, the matter is fully briefed and ready for resolution.

## II.  Claimant's Background

Claimant was 25 years old at the time he filed the instant applications for benefits, and 27 years old on the date of the ALJ's decision. (Tr. at 47, 195, 202). He is a high school graduate and communicates in English. (Tr. at 222, 224). He has previously been employed as a deli/seafood department worker in a retail store, a construction laborer, a stocker at a retail store and gas station, and a cashier at a retail store. (Tr. at 229).

2

### III.   <u>Summary of the ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments

do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in the Regulations. *Id.* §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation of extended duration) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal

4

limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental function. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through March 31, 2016. (Tr. at 38, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since September 1, 2011, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "obesity; lumbar spine degenerative disc disease; mild carpal tunnel syndrome; mild anxiety and depressive disorders." (*Id.*, Finding No. 3). The ALJ also explicitly considered Claimant's "occasional[]" complaints of headaches, but found that the impairment was non-severe. (Tr. at 39).

5

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 39-40, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to fulfill short, simple instructions. He can respond appropriately to supervisors and interact amicably with coworkers. The claimant can occasionally crouch, stoop, or climb ramps and stairs. He cannot climb ladders, ropes, and scaffolds or work around unprotected heights or work hazards, such as dangerous machinery. He can occasionally handle and feel.

(Tr. at 40-46, Finding No. 5). At the fourth step, the ALJ determined that Claimant was unable to perform any past relevant work. (Tr. at 46, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in substantial gainful activity. (Tr. at 46-47, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1986, and was defined as a younger individual on the alleged disability onset date; (2) he had at least a high school education and could communicate in English; and (3) transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that the Claimant was "not disabled," whether or not Claimant had transferable job skills. (Tr. at 46, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert (or "VE"), the ALJ determined that Claimant could perform the job of an usher at the unskilled, light exertional level. (Tr. at 46-47, Finding No. 10). The ALJ noted that the VE testified to the existence of 100 usher jobs regionally and 5000 usher jobs nationally. (Tr. at 47). The ALJ found that 5000 jobs qualified as a "significant [number of] jobs in the national economy." (*Id.*) Therefore, the ALJ concluded that Claimant was not disabled as defined

in the Social Security Act, and thus, he was not entitled to benefits. (*Id.*, Finding No. 11).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision. In his first challenge, Claimant argues that the ALJ's step-five finding is inconsistent with the VE's testimony, and therefore, the finding is not supported by substantial evidence. (ECF No. 10 at 5). Claimant points out that the ALJ's RFC finding in the written decision limited Claimant to occasional handling and *feeling*, while the ALJ's hypothetical posed to the VE at the administrative hearing limited Claimant to occasional handling and *fingering* (fine manipulation). (*Id.* at 6). Because the ALJ did not pose a hypothetical to the VE that corresponded with the ALJ's written RFC finding, Claimant insists that the VE's testimony cannot support the ALJ's step-five finding that there are a significant number of jobs in the national economy that Claimant can perform. (*Id.* at 7).

Second, Claimant contends that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p when he failed to determine whether the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.* at 7). Claimant stresses that the ALJ failed to inquire of the VE at the administrative hearing whether the VE's testimony was consistent with the DOT. (*Id.* at 8). Claimant alleges that there was an appearance of conflict between the VE's testimony and the DOT; consequently, the ALJ should have questioned the VE about any potential conflict. (*Id.* at 9). However, Claimant asserts that "[d]espite the VE's hesitancy to names jobs with the given limitations, followed by the VE being able to name only one job at what appears to be reduced numbers ... the ALJ never asked the VE whether her testimony was consistent with the DOT." (*Id.* at 10). Additionally, Claimant argues that the ALJ neglected to ask the VE to define the region that she considered in arriving at her job figures. (*Id.*) Without knowing

7

the region to which the VE was referring, Claimant asserts that it is not possible to determine whether 100 jobs regionally constitutes a significant number of jobs. (*Id.*)

In response to Claimant's first challenge, the Commissioner argues that the ALJ's hypothetical question to the VE accurately reflected the ALJ's written RFC finding. (ECF No. 11 at 4). According to the Commissioner, the ALJ asked the VE "to identify other work in the national economy for a hypothetical individual with [Claimant's] residual functional capacity, which included only occasional handling and feeling." (*Id.*) Because the VE testified in response to the ALJ's hypothetical question that there were 100 usher jobs regionally and 5000 usher jobs nationally that Claimant could perform, the Commissioner maintains the decision below should be affirmed. (*Id.* at 4-5).

With respect to Claimant's second challenge, the Commissioner contends that there was no apparent conflict between the VE's testimony and the DOT. (*Id.* at 5). The Commissioner indicates that "where an ALJ does not inquire about a conflict, remand is warranted only where there is an apparent, unresolved conflict." (*Id.*) The Commissioner notes that the job description for usher in the DOT indicates that feeling is "not present," and thus, no apparent conflict exists between the VE's testimony and the DOT. (*Id.*) As for Claimant's contention that the VE failed to define the region to which the VE was referring, the Commissioner insists that the VE identified the region as "Virginia and West Virginia." (*Id.* at 6 n.2). Nevertheless, the Commissioner argues that any failure to define the region does not require remand because a claimant is not disabled if he can perform work in significant numbers that exists in *either* the national *or* regional economy. (*Id.* at 6). In addition, the Commissioner asserts that the identification of a single job at step five suffices if that job exists in significant numbers in the national economy. (*Id.*) As such, the Commissioner argues the ALJ's finding that 5000 usher jobs exist in the national

8

economy satisfies the Commissioner's burden at step five. (*Id.* at 7).

## V.  Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VI.  Discussion[1]

### A. The ALJ's Hypothetical Question to the VE

Claimant contends that the ALJ's step-five finding is inconsistent with the VE's testimony, and thus, the ALJ's step-five finding is not supported by substantial evidence.

---

[1] Because the legal issues before the Court do not relate to the medical evidence in the record, the undersigned has omitted a discussion of Claimant's treatment records.

(ECF No. 10 at 5). In particular, Claimant insists that the ALJ's hypothetical question posed to the VE did not track the ALJ's written RFC finding. (*Id.* at 7). Consequently, Claimant argues that the VE's testimony cannot support the ALJ's step-five finding. (*Id.*)

At the fifth and final step of the sequential evaluation, the ALJ must determine if the claimant is capable of performing work that exists in sufficient numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). In doing so, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT. *Id.* §§ 404.1566(d)(1), 416.966(d)(1). The ALJ may also rely upon vocational experts to determine if a claimant is capable of performing work that exists in significant numbers in the national economy. *Id.* §§ 404.1566(e), 416.966(e).

In order for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). To frame a proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into a RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (noting that hypothetical question "need only reflect those

impairments supported by the record"). However, "[t]he Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005).

To begin, it is important to recognize that Claimant does *not* challenge the ALJ's RFC finding. Accordingly, the issue is whether the ALJ's hypothetical posed to the VE accurately reflected the ALJ's RFC finding. Contrary to the Commissioner's contention, the ALJ did not ask the VE about Claimant's limitations in handling and *feeling*; instead, the ALJ's hypothetical included limitations regarding handling and *fingering*. (Tr. at 69-71). Specifically, the pertinent colloquy between the ALJ and the VE went as follows:

> [ALJ]: And could any of those jobs we just named be done, the light or sedentary, if the individual again with the same background characteristics with the same other limitations that were in the earlier hypothetical, if handling and ***fingering*** were reduced to no more than occasional. Could they do those light or sedentary jobs. And if not, are there any light or sedentary jobs –
>
> [VE]: No, sir.
>
> [ALJ]: No light or sedentary?
>
> [VE]: I could possibly name a position as an usher, light category. That's unskilled, SVP 2. There are roughly 5,000 positions nationally, 100 regionally. DOT is 344.677-014.

(Tr. at 71) (emphasis added). The "earlier hypothetical" referred to by the ALJ included the following specifications: Claimant could perform simple instructions; respond appropriately to supervisors; interact adequately with co-workers; and occasionally stoop, crouch, or climb; however, Claimant must avoid ladders, scaffolds, unprotected heights, and dangerous machinery. (Tr. at 69). These limitations were contained in the

ALJ's RFC finding along with a limitation restricting Claimant to occasionally handling and *feeling*. (Tr. at 40).

Claimant correctly points out that the ALJ erred when he failed to include a limitation as to feeling in the hypothetical question posed to the VE. Notwithstanding, the undersigned **FINDS** that the ALJ's error was harmless. The DOT's description of the usher job indicates that feeling is "not present." DOT 344.677-014, 1991 WL 672865. Accordingly, even if the ALJ had included a limitation concerning Claimant's "feeling" ability in the hypothetical, the DOT reflects that the VE's testimony would not have differed. *See Bradley v. Colvin*, No. 2:14-cv-23774, 2015 WL 5725832, at *5 (S.D.W.Va. Sept. 30, 2015) (finding ALJ's error in neglecting to include additional limitation in hypothetical was harmless where additional limitation would not have affected vocational expert's testimony and ALJ's ultimate disability determination); *Rehm v. Colvin*, No. 1:12-7502, 2014 WL 1047255, at *10 (S.D.W.Va. Mar. 18, 2014) (finding ALJ's misstatements as to claimant's limitations in posing hypothetical question constituted harmless error where misstatements did not affect jobs identified by vocational expert). Because the ALJ's misstatement in the hypothetical regarding Claimant's manipulative limitations had no effect on the VE's testimony that Claimant could perform the job of an usher, Claimant's first ground for relief must fail.

### B. The ALJ's Compliance with SSR 00-4p

Claimant also argues that the ALJ failed to comply with SSR 00-4p when he neglected to determine whether the VE's testimony was consistent with the DOT. (ECF No. 10 at 7). Claimant asserts that the ALJ should have asked the VE if her testimony was consistent with the DOT because there was an apparent conflict between the VE's testimony and the DOT. (*Id.* at 8-10). In support of his position, Claimant relies on this

Court's decision in *Walls v. Astrue*, No. 2:09-cv-1006, 2010 WL 5672742 (S.D.W.Va. Dec. 20, 2010), *report and recommendation adopted by* 2011 WL 322645 (S.D.W.Va. Jan. 31, 2011). (ECF No. 10 at 9).

SSR 00-4p requires an ALJ to "inquire, on the record" whether a vocational expert's testimony conflicts with the DOT. 2000 WL 1898704, at *2. In addition, "[w]hen there is an apparent unresolved conflict between [vocational expert] ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." *Id.* Ultimately, SSR 00-4p requires an ALJ to "resolve" any such conflict "before relying on the [vocational expert] ... evidence to support a determination or decision about whether the claimant is disabled." *Id.*

In *Walls*, the ALJ's RFC finding and the hypothetical question posed to the vocational expert limited the claimant to occasional reaching with his right upper extremity. 2010 WL 5672742, at *3. In response to the ALJ's hypothetical question, the vocational expert identified three jobs that the claimant could perform. *Id.* The ALJ failed to ask the vocational expert whether her testimony was consistent with DOT, and the ALJ subsequently relied on the vocational expert's testimony at step-five in his written decision to deny the claimant's application for benefits. *Id.* However, the DOT's descriptions for each of the identified jobs indicated that more than occasional reaching was required. *Id.* at *4. Although this Court recognized that the failure to ask a vocational expert about potential conflicts pursuant to SSR 00-4p is harmless where there is no actual conflict, the Court found that remand was warranted because there appeared to be a conflict between the vocational expert's testimony and the DOT, and the Court would have to engage in "unwarranted speculation" to resolve the conflict. *Id.* at *4-*5.

13

More recently, the Fourth Circuit addressed the requirements of SSR 00-4p in *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), which was decided after the parties filed their memoranda in this action. In *Pearson*, the Fourth Circuit held that SSR 00-4p obliges an ALJ to "independently" identify conflicts between a vocational expert's testimony and the DOT, rather than merely relying on a vocational expert's testimony that no conflict exists. *Id.* at 208-09. The Fourth Circuit limited its holding to "apparent conflicts," "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209-10. The Court explained:

> The "apparent" conflict standard ... embraces the reality that, in many cases, testimony may only appear to conflict with the [DOT], and the vocational expert may be able to explain that, in fact, no conflict exists. However, if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision. An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT].

*Id.*

Under this standard, the Fourth Circuit found that the particular facts in *Pearson* required remand. The ALJ's RFC finding limited the claimant to occasional *overhead* reaching with his nondominant arm, and the ALJ's step-five finding relied on three jobs identified by the vocational expert that, according to the DOT, required frequent reaching. *Id.* at 210. Given the DOT's broad definition of "reaching," which might encompass bilateral overhead reaching, the Court determined that the vocational expert's testimony apparently conflicted with the DOT. *Id.* at 211. Therefore, the Fourth Circuit found that the ALJ erred by failing to identify and resolve this apparent conflict, and the Court remanded the case for the ALJ to address the apparent conflict. *Id.* at 211-12.

14

In this case, the ALJ confirmed in his written decision that he had determined the VE's testimony to be consistent with the DOT pursuant to SSR 00-4p. (Tr. at 47). Although Claimant maintains that the ALJ failed to do so and that an apparent conflict exists between the VE's testimony and the DOT, Claimant has not specifically identified the purported conflict. Indeed, the undersigned can discern no apparent conflict between the VE's testimony and the DOT. To the extent that Claimant relies on *Walls*, that case is inapposite. In *Walls*, the Court found that the ALJ's failure to ask about potential conflicts prejudiced the claimant because an apparent conflict **was present**. Here, however, there is no conflict, actual or apparent. As explicated above, the ALJ ultimately found that Claimant could perform the job of usher based on the VE's testimony, and the VE's testimony comports with the DOT's description of the job. Thus, the ALJ's failure to question the VE about potential conflicts is harmless. *See Walls*, 2010 WL 5672742, at *4 ("Generally, this court has decided cases in the past where the ALJ has not asked about a conflict, but, in fact, there was none. In those cases, the court has often determined that such an error was harmless."); *see also Williams v. Colvin*, No. 5:15-CV-60, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016) (finding ALJ's failure to question vocational expert about potential conflicts was harmless error where no actual conflict existed and collecting cases to support proposition). Furthermore, Claimant's contention that the VE's "hesitancy" in identifying the usher position required the ALJ to inquire about potential conflicts is baseless. (ECF No. 10 at 10). In the end, the VE identified a job that Claimant could perform, and Claimant is unable to pinpoint any apparent conflict between the VE's testimony and the DOT. For these reasons, the undersigned **FINDS** that any error by the ALJ in neglecting to follow SSR 00-4p was harmless and does not warrant remand.

Lastly, the undersigned finds unconvincing Claimant's argument that the VE failed to define the region she considered in providing her testimony. (*Id.*) In responding to a hypothetical question posed before the hypothetical quoted above, the VE identified the region as "Virginia and West Virginia" when listing the number of jobs available in the regional economy. (Tr. at 70). It would be exceedingly unusual for a VE to abruptly and unilaterally switch regions mid-testimony, for no apparent reason, and then fail to inform the ALJ of the change. Without any indication from the record to suggest that the VE in this case did so, the undersigned concludes that the VE's testimony referred to the Virginia and West Virginia region. Having identified the appropriate region, the undersigned **FINDS** that 100 jobs in the regional economy, even in a single occupation, constitutes a significant number of jobs. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating, in *dicta*, that 110 jobs in a given region may constitute a significant number of jobs); *see also Guiton v. Colvin*, 546 F. App'x 137, 142 (4th Cir. 2013) (recognizing *Hicks* found 110 jobs in claimant's state to be significant number of jobs); *Hodges v. Apfel*, 203 F.3d 820, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (unpublished table decision) (finding 153 jobs in region was significant number); *Hyatt v. Apfel*, 153 F.3d 720, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) (unpublished table decision) ("We previously have found that as few as 110 jobs constitute a significant number."); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (finding that 200 jobs in region was a significant number of jobs); *Kennerly v. Colvin*, No. 2:15-cv-1540, 2015 WL 9672913, at *13 (S.D.W.Va. Dec. 8, 2015) ("[I]dentification of even one occupation appropriate for Claimant fulfills the Commissioner's burden at the fifth step of the process, so long as the occupation is available in significant numbers in the economy."), *report and recommendation adopted by* 2016 WL 93867 (S.D.W.Va. Jan. 7, 2016);

*Hensley v. Colvin*, No. 5:13-CV-27810, 2015 WL 566626, at *19 (S.D.W.Va. Feb. 10, 2015) ("The Fourth Circuit has recognized that 110 jobs in a given region may constitute a significant number of jobs as required by the regulations."); *Rodriguez v. Astrue*, No. 11 Civ. 6977, 2013 WL 3753411, at *3 (S.D.N.Y. July 17, 2013) ("The term significant number is not statutorily defined and courts have generally found that what constitutes a significant number is fairly minimal.") (quoting *Fox v. Comm'r of Soc. Sec.*, No. 02 Civ. 1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)) (markings omitted).

Even assuming that the region utilized by the VE is unclear from her testimony, "the statutory scheme does not require that work exist in the immediate region where a claimant lives for it to exist in the national economy." *Lawler v. Astrue*, No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (markings omitted). Instead, as other federal courts have recognized, "[t]he issue is whether representative jobs exist in 'significant numbers' in either the local economy or the national economy." *Gnesa v. Comm'r of Soc. Sec.*, No. 2:12-cv-2298, 2014 WL 1302444, at *6 (E.D. Cal. Mar. 31, 2014) (quoting 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)); *see also Brown v. Comm'r of Soc. Sec.*, No. 3:14-cv-1462, 2015 WL 4644910, at *11 (N.D. Ohio Aug. 4, 2015) (same); *Sherwood v. Comm'r of Soc. Sec.*, No. 1:12-cv-37, 2013 WL 1213965, at *11-*12 (W.D. Mich. Mar. 25, 2013) (same). In this case, the VE testified that "roughly" 5000 usher jobs exist in the national economy. (Tr. at 71). Claimant has not argued that 5000 jobs is not a significant number under the Regulations. In fact, other courts have determined that a similar number of jobs in the national economy constitutes a significant number. *See Bishop v. Shalala*, 64 F.3d 662, 1995 WL 490126, at *2 (6th Cir. Aug. 15, 1995) (unpublished table decision) (finding 6100 jobs in national economy was significant); *Johnson v. Barnhart*, No. 03-166, 2004 WL 1529296, at *5 (D. Me. June 24, 2004)

(finding 3000 jobs in national economy may be significant); *Lombard v. Barnhart*, No. 02-146, 2003 WL 22466178, at *4 n.7 (D. Me. Oct. 31, 2003) (stating court was unpersuaded by claimant's argument that 5000 jobs in national economy was insignificant); *Mercer v. Halter*, No. 4:00CV-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (finding 5000 jobs in national economy was significant). *But see Healey v. Astrue*, No. C10-5679, 2011 WL 2619369, at *4 (W.D. Wash. May 24, 2011) (finding that 5000 jobs in national economy was not significant). Because Claimant has not argued that 5000 jobs in the national economy is an insignificant number, the undersigned **FINDS** that Claimant has waived that issue, and presumes that Claimant concedes 5000 jobs in the national economy is a significant number of jobs for the purposes of 42 U.S.C. § 423(d) and the Regulations (20 C.F.R. §§ 404.1560(c), 416.960(c)). *See Martin v. Colvin*, No. 1:14-CV-234, 2015 WL 9094738, at *8 n.4 (W.D.N.C. Dec. 16, 2015) (finding issues not raised by claimant in initial memorandum in support of motion for summary judgment were waived); *Bunton v. Colvin*, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (collecting social security decisions recognizing that failure to raise issue in opening memorandum waives that issue). Therefore, for the aforementioned reasons, Claimant's second ground for relief must also be rejected.

## VII.  Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the District Court confirm and accept the findings herein and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 10), **GRANT** Defendant's Motion for Judgment on the Pleadings, (ECF No. 11), and **DISMISS** this action, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** May 4, 2016

Cheryl A. Eifert
United States Magistrate Judge